MARLBOROUGH GAS LIGHT COMPANY *vs.* GEORGE B. NEAL & others.

Middlesex.   March 17, 1896. — May 23, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Ultra Vires — Alleged Violation of Statute — Waiver.*

An arrangement by which a gas light company undertakes to make, at the risk and expense of a certain person, a full and fair trial of his process for the manufacture of gas, while carrying on its own works, and which is not an arrangement under which the works are to be carried on by that person, does not violate the provisions of § 4 of St. 1886, c. 346, entitled "An Act in relation to gas companies."

By the terms of a contract between a gas light company and A., the last named was to pay a deficiency on demand as soon as a statement certified by the company's treasurer should be delivered to him.   Upon receiving the statement, A. made no objection to it for form, but did object to the amount charged in it for coal, and made no other objection.   The formal objection that it was not certified by the treasurer was apparent on its face.   *Held*, in an action by the company against A. for the amount of the deficiency, that it was incumbent on A., in objecting to the document for a specific reason, to mention as well the formal objections which were apparent if he intended to rely upon them, and that the limited objection made and the lack of other objection amounted under the circumstances to a waiver of any other or further statement.

CONTRACT, to recover the amount of a deficiency alleged to be due according to the terms of an agreement by which the plaintiff undertook to make, at the risk and expense of the defendants, a trial of their process for the manufacture of gas.

At the trial, before *Allen*, J., the jury returned a verdict for the plaintiff; and the defendants alleged exceptions. The facts appear in the opinion.

*J. Bennett*, (*W. H. Mitchell* with him,) for the defendants.

*H. W. Chaplin*, for the plaintiff.

BARKER, J. 1. The refusal to rule that the contract was in violation of St. 1886, c. 346, § 4, was right. That section provides: "No gas company shall transfer its franchise, lease its works, or contract with any person, association, or corporation to carry on its works, without the authority of the Legislature."

It is not contended that the contract transferred the plaintiff's franchise, or leased its works. In our opinion, it was not a contract that the defendants should carry on the works. Under it the defendants were to put in at their own expense such apparatus and appliances as might be required, in connection with the existing apparatus and appliances, to manufacture gas by a new process, controlled by the defendants, in sufficient quantity to demonstrate the practical value of the process. The contract was for a year, but was to become void if before the end of the year the defendants became the owners of four fifths of the shares of the plaintiff's capital stock. If the business of the year realized a net profit in excess of a dividend of five and one half per cent on the capital of fifty thousand dollars, the excess was to be paid to the defendants; and if the business failed to realize such a profit, the deficiency and loss were to be made up by the defendants. There was a provision for the sale to the plaintiff, at its option, of the right to use the process and of the apparatus and appliances to be put in, and there were agreements that the plaintiff should cause the same to be used in manufacturing gas in accordance with such instructions and directions as the defendants should from time to time impart to the plaintiff's superintendent, and to distribute the gas to its customers so that the process should be given a fair trial, and that the plaintiff should employ, if demanded by the defendants, a superintendent or manager of its gas works whose appointment should be approved by the defendants, and who should have charge of the business and operation of the plant and works "to a like extent as superintendents and managers of gas works are ordinarily intrusted with such duties." The defend-

ants and their agents were to be allowed free access at all times to all parts of the works and plant, but in carrying out the defendants' instructions and directions and in manufacturing or distributing gas neither the plaintiff nor its agents or employees were to be required to do anything tending to violate any law of the Commonwealth, or any ordinance or regulation of the city, or any order of the gas and electric light commissioners, nor was the plaintiff to be restricted to the use of the defendants' process.

Under this contract the works were to be carried on by the plaintiff, and not by the defendants. With the single exception of allowing the defendants to put into the works the necessary apparatus and appliances, the whole conduct of the works remained with the plaintiff. It purchased all materials, employed all labor, made all sales, regulated all prices, and determined all questions which might arise between the company and its customers, or the authorities of the Commonwealth or of the city. The superintendent or manager, whose appointment was to be approved by the defendants, was to have charge of the business and operation of the plant and works only " to a like extent as superintendents and managers of gas works are ordinarily intrusted with such duties," and that is to say, subject to the control of the plaintiff as his employer and principal. We consider the contract to be an arrangement by which the plaintiff undertook to make, at the risk and expense of the defendants, a full and fair trial of their process while carrying on its own works, and not an arrangement under which the works were to be carried on by the defendants.

2. The question of waiver was left to the jury as a question of fact, and, having regard to the state of the evidence, we think under sufficiently favorable instructions. There was a deficiency the amount of which the defendants had agreed to pay " on demand," as soon as a correct statement of the receipts and expenses of the business for the year, certified by the plaintiff's treasurer, should be delivered to the defendants. At the proper time a written statement was presented to them as and for the statement of receipts and expenses mentioned in the contract. The statement was in the form of an account, charging the defendants with certain items and crediting them with other items, the

balance against the defendants being stated at the sum of $3,903.82, and its presentation constituted a demand for payment of that sum. Upon receiving the statement, the defendants made no objection to it for form, but did object to the amount charged in it for coal, and made no other objection. The formal objection that it was not certified by the treasurer was apparent upon the face of the document, and they now show no other defect and no error in the account. When this document, which was a demand for payment, was presented as the statement which the contract made a condition precedent to the obligation to pay, it was incumbent on the defendants, in objecting to the document for a specific reason, to mention as well the formal objections which were apparent if they intended to rely upon them, and the limited objection made and the lack of other objection amounted under the circumstances to a waiver of any other or further statement. *Gerrish* v. *Norris,* 9 Cush. 167. *Brewer* v. *Winchester,* 2 Allen, 389. *Hughes* v. *Gross, ante,* 61.                                   *Exceptions overruled.*